**SEA–LAND SERVICE, INC. and
Sea-Land Freight Service, Inc.,
Petitioners,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

**No. 82–1136.**

United States Court of Appeals,
District of Columbia Circuit.

Argued 10 Dec. 1982.

Decided 21 Jan. 1983.

David G. Macdonald, Washington, D.C., with whom John T. Downing, Washington, D.C., was on the brief, for petitioners. Harry J. Jordan, Washington, D.C., also entered an appearance for petitioners.

H. Glenn Scammel, Atty., I.C.C., Washington, D.C., with whom Robert S. Burk, Deputy Gen. Counsel, and Kathleen M. Dollar, Associate Gen. Counsel, I.C.C., Washington, D.C., were on the brief, for respondent, I.C.C.

Robert J. Wiggers, Atty., Dept. of Justice, Washington, D.C., for respondent, U.S. John J. Powers, III, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for U.S.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

We are asked to review an ICC decision accepting certain contract rates filed with the Commission by the Alaska Railroad (ARR), a federally owned and operated rail system under the authority of the Sec-

retary of Transportation. We decline to do so at this time. Executive Order 11107 (1963), which calls for ARR rates to be filed with and reviewed by the Commission, is so ambiguous that we are unwilling at this time to decide whether an ICC decision on ARR rates constitutes a "final order," binding on the Secretary of Transportation and reviewable by this court. Accordingly, we will withhold our decision until 1 July 1983 so that the Executive Branch may review the precise disposition of authority regarding rates which it wishes to make between the ICC and the Secretary of Transportation, giving due effect to what influence, if any, the intervening Staggers Act of 1980 should have on such division of authority. We will await until that time the promulgation by the President of a new executive order dealing with this subject.

The Alaska Railroad was created pursuant to the Alaska Railroad Act of 1914,[1] which granted exclusive authority over the construction and operation of the railroad to the President. The President delegated those functions to the Secretary of the Interior[2] and later transferred them to the Secretary of Transportation when that office was established in 1966.[3]

From its inception, it was generally agreed that the ARR, as "an arm of the Federal Government, purchased and completed from public funds, and performing a governmental function" was "not a common carrier subject to the provisions of the Interstate Commerce Act. . . ."[4] As a result, appeals from rate changes by the management of the ARR were taken only to the

Secretary of the Interior.[5] This combination of "administrative and quasi-judicial functions"[6] exercised by the Secretary produced considerable criticism, both of the fairness of the procedure and of the resultant rates.[7] In response, Congress sought to place the ARR under ICC jurisdiction. President Eisenhower, however, vetoed an initial bill on the ground that it "would . . . subordinate certain of the President's statutory powers to those of a regulatory commission."[8] President Kennedy's administration raised the same objection to a similar subsequent bill.[9]

Executive Order 11107[10] was apparently devised as a compromise. Unfortunately, the ultimate intent of that compromise is obscured by ambiguous, even contradictory language within the Order itself.

The Order states in section 2(b) that the Secretary shall "fix, change, or modify the rates" for the transportation of passengers and property by the ARR "*with due regard for* the actions of the Interstate Commerce Commission authorized under this order."[11] The United States contends that this provision rests ultimate rate-making authority with the Secretary, subject only to an implied duty to consider in good faith the Commission's actions. In other words, the Executive Order does not give the ICC the authority to issue any final orders on ARR rates, and since only "final orders" of the ICC are reviewable by this Court,[12] the United States contends that we are without jurisdiction in this case. Furthermore, because the Secretary has discretion whether

1. 38 Stat. 305, as amended, 43 U.S.C. §§ 975–975g (1976 & Supp. IV 1980).

2. *See* Executive Orders 2129 (1915), 3861 (1923), and 11107 (1963).

3. 49 U.S.C. § 1655(i) (1976).

4. 34 Op. Att'y Gen. 232, 236 (1924). The Attorney General also noted that: "This view is in harmony with that heretofore expressed by the Interstate Commerce Commission." *Id.*

5. *See Hearings on Study of Alaska Transportation Before the Senate Commerce Committee,* 87th Cong., 1st Sess. 55–56 (1961).

6. *Hearings on Regulation of Alaska Railroad (S. 2413) Before the Senate Commerce Committee,* 87th Cong., 2d Sess. 36 (1962).

7. *Id.* at 13–14.

8. 106 Cong.Rec. 15751 (1960).

9. *Hearings on Regulation of Alaska Railroad, supra* note 7, at 5.

10. 28 Fed.Reg. 4225 (1963), codified at 49 C.F.R. § 240 (1981).

11. Exec. Order 11107 § 2(b) (emphasis added).

12. 28 U.S.C. § 2342 (1976).

or not to accept any ICC action on ARR rates, any decision by this Court on the propriety of the rates filed with the Commission would be purely an advisory opinion and, hence, beyond our constitutional power.[13]

Petitioner Sea-Land naturally disputes this conclusion and argues that sections 1 and 3 of Executive Order 11107 confer ultimate decisionmaking authority upon the ICC. Section 1 states that

the authority of the Secretary under this order "to fix, change, or modify rates for the transportation of passengers, and property" *shall be subject to* the authority of the ICC under section 3 of this order.

Section 3 authorizes the ICC to act with respect to ARR rates *"in the same manner as though* the railroad were subject to" certain enumerated sections of the Interstate Commerce Act.[14]

Sea-Land, thus, argues that any apparent executive power under Section 2(b) must succumb to the ICC's authority under sections 1 and 3. The United States contends that, on the contrary, sections 1 and 3 are subordinate to the Secretary's ultimate de-

cisionmaking authority under section 2(b), and serve no more than to establish the ICC's advisory capacity.

 We are unwilling at this time to choose between these two interpretations of Executive Order 11107.[15] It is the responsibility of Congress and the Executive Branch, not the courts, to apportion authority between a Cabinet Officer and an independent agency such as the ICC.[16] Under the Alaska Railroad Act, the President has the power to dispose of such authority as he has in whatever manner he chooses.[17] We will therefore withhold any decision in this case until 1 July 1983 to give the Executive Branch an opportunity to make clear its wishes. If, however, by that date no amendment has been made to Executive Order 11107, we will exercise our best judgment in this matter and will proceed to a judgment accordingly.

**13.** The United States also has argued that we are without jurisdiction because Executive Order 11107 does not create a private right of action by which Sea-Land may challenge the ICC's action, or, alternatively, that the President lacked the power to create a private right of action in Executive Order 11107. The ICC expressly refused to subscribe to this argument, and we find it to be without merit. Sea-Land brought this action under the Administrative Orders Review Act, 28 U.S.C. § 2342. Sea-Land does not need to rely upon Executive Order 11107 to establish a private right of action.

**14.** Exec. Order 11107 §§ 1, 3(a) (emphasis added).

**15.** We should note that the question is one of first impression. The United States has not heretofore raised this issue of jurisdiction under Executive Order 11107 and the Alaska Railroad Act, even in a prior case in which the Fifth Circuit simply assumed that the Commission had final ratemaking authority over the railroad. *American Trucking Ass'ns v. ICC,* 656 F.2d 1115 (5th Cir.1981).

**16.** For a similar judicial unwillingness to exercise Congressional and Executive responsibil-

ities, see *American Bankers Ass'n v. Connell,* 686 F.2d 953 (D.C.Cir.1979).

**17.** At oral argument, petitioner contended that, regardless of Executive Order 11107, ICC jurisdiction over the ARR was established by the Staggers Rail Act of 1980, Pub. L. 96–448 (14 Oct. 1980), codified in scattered sections in the Revised Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (1976 & Supp. IV 1980). However, neither the jurisdictional provision of that act, 49 U.S.C. § 10501, nor the "contract rates" provision at issue here, 49 U.S.C. § 10713, specifically includes the ARR. In light of past statutory history, whereby the ARR was not subjected to ICC jurisdiction, this omission appears significant. Nonetheless, we express no opinion on the appropriate resolution of this issue. This is not to deny, of course, that the Executive Branch may want to assess for itself any possible indications in the Staggers Act of congressional intent concerning ICC jurisdiction over the ARR, not as a matter of statutory interpretation (which is a judicial task) but as a matter of political prudence.